UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
HEATHER SNYDER, individually and on behalf
of all others similarly situated,

                          Plaintiff,

    - against -

LVNV FUNDING LLC and SEQUIUM ASSET
SOLUTIONS, LLC,

                          Defendants.
-------------------------------------------------------------x

**OPINION & ORDER**

No. 21-CV-7794 (CS)

Appearances:

Kenneth Willard
Stein Saks, PLLC
Hackensack, New Jersey
*Counsel for Plaintiff*

Brendan H. Little
Lippes Mathias LLP
Buffalo, New York
*Counsel for Defendants*

Seibel, J.

    Before the Court is the motion for summary judgment of Defendants LVNV Funding

LLC ("LVNV") and Sequium Asset Solutions, LLC ("SAS").  (ECF No. 40.)  For the following

reasons, the motion is GRANTED.

## I.    **BACKGROUND**

### A.    **Facts**

    The following facts are based on the parties' Local Civil Rule 56.1 Statements and

supporting materials, and are undisputed except as noted.

This Fair Debt Collection Practices Act ("FDCPA") dispute arises out of a debt collection letter (the "Letter") sent to Plaintiff on July 28, 2021 by Defendant SAS on behalf of Defendant LVNV.  (ECF No. 39-5.)

Plaintiff had defaulted on a debt with Capital One Bank, and the debt was eventually transferred to North Star Capital Acquisitions LLC ("North Star"), which obtained a judgment on the debt that was entered on April 13, 2009.  (ECF No. 42 ("Ds' 56.1 Stmt.") ¶¶ 1-2; ECF No. 39-4.)  The judgment total was $1,015.20, which included pre-judgment interest at a rate of nine percent per year running from July 14, 2004, as well as certain fees and costs.  (ECF No. 39-4.)  At some point, the judgment was transferred to Defendant LVNV, which is a subsidiary or "arm" of non-party Resurgent Capital Services.  (ECF No. 39-7 ("Koepke Depo.") at 26:6-9.)  LVNV contracted with SAS to attempt to collect on the judgment.  (Ds' 56.1 Stmt. ¶¶ 3-4.)

On July 28, 2021, SAS sent the Letter to Plaintiff on behalf of LVNV.  (ECF No. 39-5.)  The Letter stated that the "Total Due" on Plaintiff's account was $2,017.83; had a heading stating, "Settlement Offer on your Judgment;" and had a subheading stating, "Our Client will Forgive 35% of Your Balance."  (*Id.*)  The Letter continued:

> This notice is being sent to you by a collection agency.  Please be advised that Lvnv Funding LLC, the Current Creditor-Debt Purchaser, has purchased the account referenced above.  Our records indicate that the Judgment that was awarded on 04/13/2009 remains unresolved.  This is the date on which the balance became due.
>
> We have a very special offer to resolve your unpaid balance with our client.  We are willing to settle your account for 65% of the balance due as stated above.  It is understandable that you may not be able to take advantage of this opportunity at this time.  We are willing to work with you on a payment plan that meets your current financial situation.  You are encouraged to contact our office so we can help assist you in putting this matter behind you.
>
> You can contact us at the phone number listed above or you can communicate with us about your account at www.sequium.com.

(*Id.*)  Defendants make several assertions about the Letter that Plaintiff disputes.

First, Defendants contend that the Letter "clearly stated the balance owed of $2,017.83." (Ds' 56.1 Stmt. ¶ 6.)  Plaintiff purports to dispute that assertion on the grounds that, under section 5003 of the New York Civil Practice Laws and Rules ("CPLR"), "[p]ost-judgment interest was accruing on the debt at an annual percentage rate of 9% from July 14, 2004," and the Letter failed to state this fact and also failed to provide a deadline to accept the settlement offer. (ECF No. 39-1 ("P's 56.1 Resp.") ¶ 6.)[1]  Plaintiff also states that Defendant LVNV had chosen not to collect post-judgment interest while the account was placed with SAS, (*id.*) – that is, during the timeframe relevant to this lawsuit.  This latter statement seems to concede, rather than dispute, the fact that the Letter clearly stated the balance that Defendants sought on the debt – *i.e.*, the balance owed.  Documentary evidence from SAS's internal software system supports that conclusion, as it reflects that the original and current balance of the account in question, as of September 17, 2021, was $2,017.83, and the interest rate was zero.  (ECF No. 39-6; Koepke Depo. at 43:9-44:21.)

Second, Plaintiff disputes, with factual contentions that are similar to those just detailed, Defendants' statements that "[n]o interest was accruing on Plaintiff's account while the account was placed with SAS."  (P's 56.1 Resp. ¶ 8.)  Here the parties seem at odds about the use of the term "accruing."  Plaintiff appears to be correct that under CPLR § 5003, interest was automatically accruing on the judgment, but Defendants represent, and their records reflect, that no interest was being added to the balance to be charged to Plaintiff while the debt was with SAS.  (ECF No. 39-6; Koepke Depo. at 43:9-44:21.)  In short, while Defendants may have had

---

[1] The judgment includes interest at 9% from July 14, 2004, (ECF No. 39-4), but any interest that accrued prior to the entry of judgment on April 13, 2009 is not "post-judgment interest," but rather would be pre-judgment interest.  Plaintiff is nonetheless correct that CPLR § 5003 provides, "Every money judgment shall bear interest from the date of its entry."  N.Y. C.P.L.R. § 5003.

the legal right to add interest to Plaintiff's balance, they had not done so at the time Plaintiff filed suit.

Finally, Plaintiff disputes Defendants' statements that "[t]he total due for the debt is $2,017.83," (P's 56.1 Resp. ¶ 9), and that "[a]s indicated in the letter, Plaintiff would have fully resolved [the] debt by paying 65% of $2,017.83 at any point in time while SAS had the debt placed with it," (*id.* ¶ 10). On the former point, Plaintiff contends that the actual amount of the "debt" included any post-judgment interest, regardless of Defendants' intention to waive or not seek to collect any accrued interest. (*Id.* ¶ 9.) On the latter point, Defendants have supported their contention that payment of that amount during the time when the debt was placed with SAS would have satisfied it in full. (*See* ECF No. 10-2 ("Ertischek Decl.") ¶ 6.) Plaintiff argues that the Letter failed to disclose that information clearly enough for her to make an informed choice about what to do in response to the Letter. (P's 56.1 Resp. ¶ 10.) She also asserts facts about Defendants' typical course of dealing with debts like hers, which are discussed below but do not amount to a dispute of the specific statement that Plaintiff's debt would have been resolved by payment of the amount stated in the Letter while the debt was placed with SAS. (*Id.*)

Plaintiff also makes several additional statements of fact that she represents are material and disputed, although several of these assertions are better characterized as additional facts that Plaintiff believes are helpful, which are not properly included in a Rule 56.1 response. *See Ostreicher v. Chase Bank USA, N.A.*, No. 19-CV-8175, 2020 WL 6809059, at *1 n.1 (S.D.N.Y. Nov. 19, 2020) ("There is no provision for a responsive 56.1 Statement to include additional facts that are not in dispute but that a party opposing summary judgment simply thinks are

important; any additional facts should be confined to material facts in dispute.").[2]  Plaintiff

repeats many of the same contentions recounted above, some of which are factual assertions and

others of which are arguments not properly included in a Rule 56.1 submission.  (P's 56.1 Resp.

¶ 11.)  Plaintiff states accurately that the Letter is silent regarding the duration of the offer and

that Resurgent/LVNV's practice is to recall debts from SAS if they are not settled – often after a

"normal placement period" of five to six months.  (P's 56.1 Resp. ¶ 11; *see* Koepke Depo. at

27:17-30:23, 64:17-65:5, 80:10-81:6.)  Plaintiff then cites to her affidavit, (ECF No. 39-3 ("P's

Aff.")),[3] asserting that she was confused by the lack of a deadline in the Letter; that she needed

to know the deadline because even though she was unemployed when she received the Letter,

she believed she would be employed at some point in the future, which would have put her in a

position to potentially accept the offer; that she did in fact become employed in October 2021

and got a different job in February 2022 but, despite becoming employed, did not know whether

the offer in the Letter was still available; that she knows unpaid debts usually accrue interest but

was unsure in this case because the Letter said nothing about interest; and that without knowing

that Defendants were waiving post-judgment interest, she did not know whether it made sense to

accelerate her job search or ask family and friends for money to potentially start paying the debt.

(P's 56.1 Resp. ¶¶ 12-20; P's Aff. ¶¶ 6, 11-12.)  While not explicitly stated in her affidavit, at her

---

[2] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

[3] Defendants argue that I should disregard both Plaintiff's affidavit and that of Plaintiff's counsel, (ECF No. 39-2 ("Willard Aff.")), on the grounds that neither is sworn or made under penalty of perjury.  (ECF No. 43 ("Ds' Reply") at 6.)  But both documents include the following statement:  "I hereby declare and affirm under penalties of perjury under the laws of the United States that the contents of this Affidavit are true and correct."  (Willard Aff.; P's Aff.)  That is sufficient under 28 U.S.C. § 1746.  *See LeBoeuf, Lamb, Greene & MacRae, L.L.P. v. Worsham*, 185 F.3d 61, 65 (2d Cir. 1999).  Accordingly, I will consider both affidavits and the documents attached thereto.

deposition Plaintiff stated multiple times that while she wanted to pay the debt, she was not in a position to do so financially at the time she received the Letter.  (ECF No. 41-1 ("P's Depo.") at 19:10-14, 32:11-17, 37:22-23.)[4]

### B.    Procedural History

Plaintiff initiated this action on September 17, 2021.  (ECF No. 1.)  Defendant LVNV answered on October 29, 2021, (ECF No. 9), and attached to its Answer a declaration from Patricia Sexton, LVNV's Authorized Representative and custodian of records, (ECF No. 9-1 ("Sexton Decl.")).  Defendant SAS answered on November 1, 2021, (ECF No. 10), and attached to its Answer a copy of Ms. Sexton's declaration and a second declaration from Shaun Ertischek, SAS's Chief Compliance Officer, General Counsel, and custodian of records, (Ertischek Decl.).  On November 9, 2021, Defendants requested a pre-motion conference in anticipation of a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  (ECF No. 14.)  Plaintiff responded, (ECF No. 16), and also filed a proposed case management plan in anticipation of discovery, (ECF No. 17).  On November 23, 2021, I held a pre-motion conference at which I advised Defendants that they could not rely on the declarations attached to their Answers on a Rule 12(c) motion,[5] granted Plaintiff leave to amend, and told Defendants that they could either move to dismiss the forthcoming Amended Complaint under Rule 12(b) or, if they intended to base their motions on the assertions in the declarations, bring a motion for

---

[4] At Plaintiff's deposition, the only reference to potentially paying the debt occurred when she was asked if she had the funds to resolve the account at the time she received the Letter, and responded, "[I]f I would have, if I would have – if it was a – I would have tried to do something or borrow something, but I don't, you know, I don't – you know, as of the time I received the letter, I wasn't working."  (P's Depo. at 38:14-39:2.)

[5] "[A] court may not resolve [a] motion [for judgment on the pleadings] by weighing the plausibility of competing allegations or by considering evidence extrinsic to the non-movant's pleading without converting the motion to one for summary judgment."  *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 306 (2d Cir. 2021).

summary judgment under Rule 56.  (*See* Minute Entry dated Nov. 23, 2021.)  Defendants opted for the latter.  (*Id.*)

Plaintiff filed her Amended Complaint on December 9, 2021, alleging that Defendant's Letter violated the FDCPA – specifically, 15 U.S.C. §§ 1692e and 1692g(a)(1).  (ECF No. 20 ¶¶ 5, 71-80.)  Defendants timely answered.  (ECF Nos. 21, 22.)  At the close of discovery, Plaintiff filed a pre-motion letter in anticipation of a motion for class certification, (ECF No. 31), and Defendants filed a pre-motion letter in anticipation of a motion for summary judgment, (ECF No. 33).  On June 2, 2022, I held a pre-motion conference, advised the parties that I would address the motion for summary judgment before taking up class certification, and set a briefing schedule.  (*See* Minute Entry dated June 2, 2022.)  The instant motion followed.  (ECF No. 40.)

## II.     LEGAL STANDARD

### A.     Standing

Article III of the Constitution limits a federal court's jurisdiction to actual "Cases" and "Controversies."  U.S. Const. art. III, § 2; *see Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559 (1992).  "Constitutional standing is the threshold question in every federal case, determining the power of the court to entertain the suit."  *Leibovitz v. N.Y.C. Transit Auth.*, 252 F.3d 179, 184 (2d Cir. 2001).  That is, where a party lacks standing to bring a claim, the court lacks subject matter jurisdiction over that claim and must dismiss it.  *See SM Kids, LLC v. Google LLC*, 963 F.3d 206, 210 (2d Cir. 2020).

"The objection that a federal court lacks subject-matter jurisdiction may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment."  *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006).  Under Rule 12(h)(3),

"[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  Fed. R. Civ. P. 12(h)(3).

"A plaintiff must demonstrate standing 'with the manner and degree of evidence required at the successive stages of the litigation.'"  *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021) (quoting *Lujan*, 504 U.S. at 561).  While "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice" to establish standing, on a motion for summary judgment "the plaintiff can no longer rest on such 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts'" that demonstrate standing. *Lujan*, 504 U.S. at 561 (quoting Fed. R. Civ. P. 56(e)).  The party invoking federal jurisdiction bears the burden of establishing standing.  *Id.*; *see Nat. Res. Def. Council, Inc. v. U.S. Food & Drug Admin.*, 710 F.3d 71, 79 (2d Cir. 2013), *as amended* (Mar. 21, 2013).

**B.    Summary Judgment**

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[T]he dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing law . . . .  Factual disputes that are irrelevant or unnecessary will not be counted."  *Id.*  On a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Id.* at 255.

The movant bears the initial burden of demonstrating "the absence of a genuine issue of material fact," and, if satisfied, the burden then shifts to the non-movant to "present evidence sufficient to satisfy every element of the claim."  *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d

Cir. 2008). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252. Moreover, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and "may not rely on conclusory allegations or unsubstantiated speculation," *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001).

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c)(1). Where a declaration is used to support or oppose the motion, it "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the . . . declarant is competent to testify on the matters stated." *Id.* 56(c)(4); *see Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008). If "a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it." Fed. R. Civ. P. 56(e).

## III.    DISCUSSION

I start and end with Defendants' argument that Plaintiff lacks standing to bring this claim, as "standing is a threshold matter [the Court] must resolve before reaching the merits." *Anderson Grp., LLC v. City of Saratoga Springs*, 805 F.3d 34, 44 (2d Cir. 2015).

There are three constitutional standing requirements that every plaintiff must satisfy in order to invoke the jurisdiction of the federal courts: (1) injury in fact; (2) causation; and (3) redressability. *Sprint Commc'ns Co. v. APCC Servs., Inc.*, 554 U.S. 269, 273-74 (2008). "[S]tanding is measured as of the time the suit is brought." *Comer v. Cisneros*, 37 F.3d 775, 791 (2d Cir. 1994); *Vaccariello v. XM Satellite Radio, Inc.*, 295 F.R.D. 62, 68 (S.D.N.Y. 2013) ("A plaintiff's standing is considered at the time the action was commenced.").

Here, the parties dispute whether Plaintiff has demonstrated an injury in fact – that is whether she has shown "the invasion of a [1] legally protected interest that is [2] concrete and [3] particularized and [4] actual or imminent, not conjectural or hypothetical." *Maddox v. Bank of N.Y. Mellon Tr. Co., N.A.*, 19 F.4th 58, 62 (2d Cir. 2021).

A plaintiff must identify a concrete harm to have standing. *TransUnion*, 141 S. Ct. at 2200; *Maddox*, 19 F.4th at 62-63. To be "concrete" a harm must have a "'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *TransUnion*, 141 S. Ct. at 2204 (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016)). "[C]ourts may not assume that the existence of a statutory prohibition or obligation automatically elevates that prohibition or obligation to a harm that is concrete under Article III." *Kola v. Forster & Garbus LLP*, No. 19-CV-10496, 2021 WL 4135153, at *5 (S.D.N.Y. Sept. 10, 2021); *see TransUnion*, 141 S. Ct. at 2205 ("For standing purposes . . . an important difference exists between (i) a plaintiff's statutory cause of action to sue a defendant over the defendant's violation of federal law, and (ii) a plaintiff's suffering concrete harm because of the defendant's violation of federal law."). "To establish standing a plaintiff must not only show that the defendant's conduct violated a statute, but that the plaintiff was '*concretely harmed* by a defendant's statutory violation.'" *Kola*, 2021 WL 4135153, at *5 (quoting *TransUnion*, 141 S.

Ct. at 2205 (emphasis in original)).  Tangible harms, including "monetary harms" are among those that "readily qualify as concrete injuries under Article III." *TransUnion*, 141 S. Ct. at 2204.

A risk of future harm is only a concrete injury in cases seeking injunctive relief. *Id.* at 2210.  The Supreme Court in *TransUnion* found "persuasive" the argument that "in a suit for damages," such as the instant case, "the mere risk of future harm, standing alone, cannot qualify as a concrete harm – at least unless the exposure to the risk of future harm itself causes a *separate* concrete harm." *Id*. at 2210-11 (emphasis in original).  "*TransUnion* established that in suits for damages plaintiffs cannot establish Article III standing by relying entirely on a statutory violation or risk of future harm:  'No concrete harm; no standing.'" *Maddox*, 19 F.4th at 64 (quoting *TransUnion*, 141 S. Ct. at 2214).

Plaintiff claims that she suffered a tangible – that is, monetary – harm and does not argue that any intangible harms are at issue.  (*See* ECF No. 39 ("P's Opp.") at 7-12.)[6]  She claims that, had she not been confused by the Letter and the lack of an expiration date on Defendants' settlement offer, she would have tried to borrow money from friends or family that might have allowed her to make payments on the debt.  (*See* P's Aff. ¶¶ 6, 11.)  She also points to the fact that several months after she received the Letter, she got employment that might have allowed her to begin payments toward the settlement amount, but that she did not do so because she did not know whether the offer was still open.  (*Id.* ¶¶ 7-9.)  Plaintiff argues that because the Letter confused her, and that confusion caused her not to attempt to get the funds that might have

---

[6] While Plaintiff seems to concede the point, I note that her alleged confusion, in and of itself, is "insufficient to establish a concrete injury sufficient to confer Article III standing." *Schmelczer v. Penn Credit Corp.*, 20-CV-2380, 2022 WL 862254, at *7 (S.D.N.Y. Mar. 23, 2022) (collecting cases).

allowed her to accept the settlement offer, interest continued to accrue on her debt. That additional interest, along with the potential loss of the opportunity to settle the debt at the lower amount offered in the Letter, are the pecuniary harms that Plaintiff claims are concrete.

There are two problems with Plaintiff's theory. First, as noted, Plaintiff fails adduce any evidence that at the time she filed this lawsuit, she had lost out on the opportunity to accept the settlement offer presented to her in the Letter. (*See* Ds' 56.1 Stmt. ¶ 10; Ertischek Decl. ¶ 6.) In fact, the evidence suggests that the debt had not been recalled from SAS on the date this suit was filed, (*see* ECF No. 39-6), and accordingly the offer remained open and interest was not being added to her balance, (Ertischek Decl. ¶ 6). While LVNV might have had the right to seek more than the settlement it offered or to seek the interest that had accrued on her debt, it apparently never did so. Thus, even accepting at face value Plaintiff's position that her confusion caused her to not explore all avenues she might have had to get the money to accept Plaintiff's offer, there was no pecuniary harm because there is no evidence that the amount of money she was being asked to pay had grown due to interest, fees, or even the revocation of Defendants' offer of settlement. In short, the pecuniary harm that Plaintiff describes had not materialized. Thus, it is the exact sort of "nebulous risk of future harm" that *TransUnion* and its progeny reject. *Maddox*, 19 F.4th at 65; *see TransUnion*, 141 S. Ct. at 2210-11.

Second, Plaintiff concedes that she lacked the funds to pay the debt in question when she received the Letter. (P's Depo. at 19:10-14, 32:10-17, 37:22-23.) She asserts that had she been given a deadline, she would have tried to secure funds by asking for help from friends and family. (P's Aff. ¶ 6.) But this statement hardly shows that she would have been able to accept the offer and begin paying down the debt, as her success would depend on a number of factors, including but not limited to what help she was actually able to get and what sort of payment plan

she could work out with SAS.  She does not identify any source that would have actually been willing and able to provide the money.  Any ability to accept the offer by borrowing from friends or family is thus entirely hypothetical.  She also states that after she got a job, she "would have been in a better position to evaluate [her] chances of paying back any agreed-upon settlement based on the eventual change in [her] income," (*id.* ¶¶ 7-9), and that had the Letter given her a deadline to accept the settlement offer, she would have been able to "evaluate [her] prospects of meeting monthly payments," (*id.* ¶ 8).[7]  But she got those jobs after she filed this lawsuit – that is, after the time at which standing is properly assessed, *see Comer*, 37 F.3d at 791 – and thus any ability to pay based on employment was also hypothetical at the relevant time.  Moreover, there is no indication that her employment would have permitted Plaintiff to resolve the debt. She does not represent that she could have or would have accepted the offer once she was employed; she just says she would have eventually been in a position to assess the possibility of making monthly payments.  "The possibility that Plaintiff may have been in a position to pay the debt at some point in the future, and at that point might be harmed (in the form of accruing interest that she otherwise would have avoided) represents 'the mere risk of future harm,' which is insufficient to establish standing in a suit for damages."  *Kola*, 2021 WL 4135153, at *6 (quoting *TransUnion*, 141 S. Ct. at 2210-11).[8]

---

[7] Plaintiff's statement that she was "left without any recourse in evaluating my prospects of payment, and therefore could not accept the settlement offer" is simply false:  if she wanted to evaluate her prospects of payment, including by exploring what kind of payment plan SAS might offer and inquiring how long she had to accept the settlement offer, the Letter provided contact information and encouraged her to reach out to discuss the offer.  (*See* ECF No. 39-5.)  In fact, the Letter even acknowledged that Plaintiff "may not be able to take advantage of this opportunity at this time" and encouraged the Plaintiff to contact SAS so that they could "work with [Plaintiff] on a payment plan that meets [Plaintiff's] current financial situation."  (*Id.*)

[8] Plaintiff attempts to distinguish *Kola* by arguing that her "risk of harm that she would have been able to pay in the future, and therefore, would have been able to accept a settlement agreement at a later date, have materialized in actual harm because she was in fact employed . . .

The differences between this case and the main case on which Plaintiff relies, *Chuluunbat v. Weltman, Weinberg & Reis Co., LPA*, No. 21-1584, 2022 WL 1599325 (7th Cir. May 20, 2022), highlight this issue.  In *Chuluunbat*, the plaintiff received an offer to settle a "balance due" of $4,212.90 at 40 cents on the dollar if he paid before a certain date.  *Id.* at *1.  He did not accept the offer, and the day after it expired he called the defendant, who advised him that interest had been accruing during the pendency of the offer and that the balance he owed was now $4,306.29.  *Id.*  In his complaint, the plaintiff "alleged that he would have taken the settlement offer, which would have saved him thousands of dollars, had he known that his 'balance' was a judgment that was increasing daily."  *Id.* at *3.  The Seventh Circuit found that the district court had improperly granted the defendant's motion to dismiss for lack of standing because the plaintiff had alleged "more than a bare procedural violation."  *Id.*  Rather, he had "alleged dollars-and-cents harm resulting from the letter," and that his "increased debt," which defendant was seeking to collect, was a concrete injury.  *Id.* at *1, *3.

Here there is no increased debt; Defendants did not seek to collect any balance beyond that represented the in the Letter.  SAS's records reflect that there was no interest accruing on Plaintiff's account, and Defendants' representatives affirmed that the $2,017.83 was the total due for the debt as of October 2021.  (Sexton Decl. ¶¶ 5-6; Ertischek Decl. ¶¶ 5-6.)  Plaintiff, then, was not faced with an increased payment obligation, but only the risk that in the future

---

a mere three months after receiving the Letter."  (P's Opp. at 12.)  But employment obviously does not necessarily equate to ability to pay, and Plaintiff presents no evidence suggesting that she was in a position to resolve the debt at any time after receipt of the Letter.  Without such evidence, the risk of future harm has not ripened into concrete harm.  The same reasoning defeats her argument that her "confusion about the interest in the Letter led her not to pay the debt and therefore led to further interest accruals that would not have happened but for the confusion in the Letter."  (*Id.*)  Plaintiff cannot show that she would have paid the debt but for her confusion, when she admits she did not have the money and has not identified any source that would have been available and sufficient to enable her to accept the offer.

Defendants or some other entity would seek more money from her than what she was offered in the Letter. That hypothetical set of circumstances represents only the risk of future harm, and is thus not concrete. *See TransUnion*, 141 S. Ct. at 2210-11; *Maddox*, 19 F.4th at 63.

Plaintiff's failure to establish a concrete harm sufficient to establish standing deprives this Court of subject matter jurisdiction over her claims. Accordingly, Plaintiff's claims must be dismissed without prejudice. *See Katz v. Donna Karan Co.*, 872 F.3d 114, 121 (2d Cir. 2017) (where a district court lacks subject matter jurisdiction, it lacks "the power to dismiss the case with prejudice").[9]

## IV.    CONCLUSION

For the foregoing reasons, Defendant's motion is GRANTED, and Plaintiff's claims are dismissed without prejudice. The Clerk of Court is respectfully directed to terminate the pending motion, (ECF No. 40), enter judgment for Defendants, and close the case.

**SO ORDERED.**

Dated: January 30, 2023
          White Plains, New York

_____
          CATHY SEIBEL, U.S.D.J.

---

[9] If I had subject matter jurisdiction to reach the merits of this case, I would grant summary judgment in Defendants' favor and dismiss the claims with prejudice. Plaintiff claims that the Letter was misleading and failed to represent the true amount of the debt because the Letter was required to either inform Plaintiff that interest was accruing or provide a date by which the settlement offer could be accepted. This exact argument was addressed and rejected by the courts in *Weiss v. Sequium Asset Sols.*, No. 21-CV-218, 2022 WL 1046260 (E.D.N.Y. Apr. 7, 2022) and *Felberbaum v. Sequium Asset Sols.*, No. 21-CV-9513, 2023 WL 167559 (S.D.N.Y. Jan. 11, 2023). I believe those courts correctly applied the relevant Second Circuit precedent – in particular *Cortez v. Forster & Garbus, LLP*, 999 F.3d 151 (2d Cir. 2021) – and would dismiss Plaintiff's claims for substantially the same reasons as stated in those opinions.